# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge William J. Martínez

Civil Action No. 18-cv-3245-WJM
Bankruptcy Case No. 18-14333-MER

*In re*:

WAY TO GROW, INC.
PURE AGROBUSINESS, INC.
GREEN DOOR AGRO, INC.

    Debtors.

WAY TO GROW, INC., *et al.*,

    Appellants,

v.

COREY INNISS

    Appellee.

## ORDER DENYING STAY PENDING APPEAL

Appellants Way to Grow, Inc., Pure Agrobusiness, Inc., and Green Door Agro, Inc. (together, "Appellants"), are debtors in the underlying Chapter 11 bankruptcy proceeding. They appeal the bankruptcy court's order dismissing their bankruptcy proceedings. The bankruptcy court found, after an evidentiary hearing, that Appellants sell products (hydroponic gardening equipment) that they know will be used to grow marijuana, which remains illegal under federal law (both the marijuana itself and sale of equipment knowing that it will be used to grow marijuana). The bankruptcy court reasoned that bankruptcy protection is unavailable to Appellants in such circumstances, and that there was no feasible alternative (*e.g.*, ordering Appellants to stop servicing the

marijuana industry) that might permit the case to remain in bankruptcy court.

Currently before the Court is Appellants' Motion for Stay Pending Appeal Pursuant to Fed. R. Bankr. P. 8007. (ECF No. 9.) Appellee Corey Inniss, who filed the motion in the bankruptcy court that prompted that court to dismiss the proceedings, opposes Appellants' current motion. (ECF No. 10.) For the reasons explained below, the Court concludes that Appellants have not shown a sufficient likelihood of success on appeal, and so declines to enter a stay pending appeal.

## I. BACKGROUND

The Court draws the following summary from the bankruptcy court order at issue here. ("Dismissal Order," ECF No. 9-1.)[1]

Appellants Way to Grow and Green Door operate retail outlets, selling equipment for indoor hydroponic gardening and related supplies. (*Id.* at 1–2.) Both entities are subsidiaries of Appellant Pure Agrobusiness. (*Id.* at 1.)

Appellee originally founded Way to Grow, but sold it for $2.5 million in cash, a promissory note in the principal amount of $22.5 million, and 12.5 million shares of Pure Agrobusiness. (*Id.* at 2.) The promissory note was secured by all three Appellants' property and assets. (*Id.*)

Appellants, however, operated at a significant loss. (*Id.* at 3.) Thus, in April 2018, Appellee filed an action in Larimer County District Court against Appellants, seeking appointment of a receiver. (*Id.* at 2.) Appellants then filed for Chapter 11 bankruptcy, before the state court could rule on the request to appoint a receiver. (*Id.* at 3.)

---

[1] ECF No. 379 on the bankruptcy court's docket.

In the bankruptcy court, Appellee moved to dismiss the bankruptcy proceeding on a number of grounds including, as relevant here, that Appellants' business is inextricably linked to the marijuana industry, which remains illegal under federal law and therefore Appellants cannot qualify for bankruptcy protection. The bankruptcy court held a four-day evidentiary hearing and then issued the Dismissal Order. The bankruptcy court concluded that Appellants knew they were selling their hydroponic equipment for use in the marijuana industry, and so were violating 21 U.S.C. § 843(a)(7), which prohibits such sales in light of that knowledge. (*Id.* at 20–26.) The bankruptcy court further concluded that it could not "enforce federal [bankruptcy] law in aid of [Appellants] because [Appellants'] ordinary course activities constitute a continuing federal crime." (*Id.* at 26.) The bankruptcy court therefore granted Appellee's motion to dismiss on December 14, 2018. (*Id.* at 28.)

On December 17, 2018, Appellants moved the bankruptcy court for a stay pending appeal. (*See* ECF No. 4 at 8.) The bankruptcy court denied that motion the next day, December 18, 2018. (*See* ECF No. 10-4.)

Also on December 18, 2018, Appellants filed this appeal. (*See* ECF No. 1.) On December 28, 2018, Appellants filed the motion currently under consideration. (ECF No. 9.) The matter was drawn to the undersigned on January 8, 2019. (ECF No. 11.) On January 9, 2019, the Court *sua sponte* granted a temporary stay pending resolution of Appellants' motion. (ECF Nos. 12, 15–16.)

## II. LEGAL STANDARD

The stay-pending-appeal analysis comprises four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay;

3

> (3) whether issuance of the stay will substantially injure the
> other parties interested in the proceeding; and (4) where the
> public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). "The first two factors of the traditional standard are the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009).[2]

### III. ANALYSIS

The Court concludes that Appellants' argument for a stay is fatally deficient on the first element, likelihood of success, and so the Court need not address the other three elements.

### A.     Statutory Interpretation

Appellants' first argument is that the bankruptcy court misconstrued 21 U.S.C. § 843(a)(7). (ECF No. 9 ¶¶ 16–18, 21–24.) Section 843(a)(7) is part of the Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801 *et seq.*, and reads, in relevant part, as

---

[2] Appellants argue that a strong showing on the second, third, and fourth factors means that a somewhat lesser showing on the first factor may be excused. (ECF No. 9 ¶ 13.) In support, Appellants cite *In re Neighbors*, 2016 WL 8671890, at *1 (D. Kan. Apr. 29, 2016), which in turn cites *FTC v. Mainstream Marketing Services, Inc.*, 345 F.3d 850 (10th Cir. 2003). The latter decision states, "With respect to the four stay factors, where the moving party has established that the three 'harm' factors tip decidedly in its favor, the 'probability of success' requirement is somewhat relaxed." *Id.* at 852 (footnote omitted). Whether this principle remains valid—or was ever valid—is unclear. First, it seems ignorant of, and contrary to, the Supreme Court's pre-existing requirement for a "*strong* showing that [the appellant] is likely to succeed." *Hilton*, 481 U.S. at 776 (emphasis added). Second, the Supreme Court characterizes the first factor as among the two "most critical." *Nken*, 556 U.S. at 434. Third, in *Diné Citizens Against Ruining Our Environment v. Jewell*, 839 F.3d 1276 (10th Cir. 2016), the Tenth Circuit held that the "somewhat relaxed" principle is invalid as applied to preliminary injunctions, whose availability turns on materially the same four factors as a stay pending appeal. *See id.* at 1282 ("any modified test which relaxes one of the prongs for preliminary relief and thus deviates from the standard test is impermissible"); *cf. In re Abengoa Bioenergy Biomass of Kansas, LLC*, 2018 WL 1613667, at *3 (Bankr. D. Kan. Mar. 29, 2018) (in light of *Diné Citizens*, "conclud[ing] that the modified test or relaxed success on the merits factor is not applicable in determining whether a stay pending appeal should be granted"). As to that argument, however, stays pending appeal and injunctions, although governed by similarly-phrased factors, are not the same thing. *See Nken*, 556 U.S. at 428–30. Regardless, whether the "somewhat relaxed" principle remains valid or not, the Court on the current record cannot "relax" the first factor to the point where the other three factors might compensate for Appellants' deficiencies on the merits.

4

follows:

> It shall be unlawful for any person knowingly or intentionally * * * to manufacture, distribute, export, or import any three-neck round-bottom flask, tableting machine, encapsulating machine, or gelatin capsule, or any equipment, chemical, product, or material which may be used to manufacture a controlled substance or listed chemical, knowing, intending, or having reasonable cause to believe, that it will be used to manufacture a controlled substance . . . .

Appellants argue that manufacturing or distributing hydroponic gardening equipment, even with knowledge that it will be used for marijuana cultivation, does not qualify as manufacturing or distributing within the meaning of the CSA. (ECF No. 9 ¶¶ 22–24.) Appellants point to 21 U.S.C. § 802(11) and (15), which read in relevant part as follows:

> As used in this subchapter:
>
> * * *
>
> The term "distribute" means to deliver (other than by administering or dispensing) a controlled substance or a listed chemical. . . .
>
> * * *
>
> The term "manufacture" means the production, preparation, propagation, compounding, or processing of a drug or other substance . . . .

The reference to "this subchapter" is to Subchapter I of the CSA, encompassing §§ 801–904. Accordingly, the definitions in § 802 at least nominally apply to § 843(a)(7). But inserting those definitions into § 843(a)(7) would make nonsense of the statute. The proper construction of "manufacture" and "distribute" in § 843(a)(7) is obvious from its internal context, despite the definitions in § 802 that supposedly apply. *Cf. Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302, 319–20 (2014) ("To be sure,

5

Congress's profligate use of 'air pollutant' where what is meant is obviously narrower than the Act-wide definition is not conducive to clarity. . . . [But] the presumption of consistent usage readily yields to context, and a statutory term—even one defined in the statute—may take on distinct characters from association with distinct statutory objects calling for different implementation strategies." (internal quotation marks omitted)). Appellants therefore have not shown any likelihood of success on this argument.

**B.    Indiscriminate Treatment of All Appellants**

Appellants next argue that the bankruptcy court "improperly conflated" their conduct because, in particular, Pure Agrobusiness is only a holding company and so does not manufacture or distribute anything. (ECF No. 9 ¶¶ 19–20.) Appellee counters that Appellants never raised this argument in the bankruptcy court. (ECF No. 10 ¶ 14.) Appellants reply as follows: "The argument is wholly without merit, and belied by the record, including the separate Statement of Financial Affairs and Schedules (as amended) for each of the individual [Appellants], and the financial information, which shows a financial breakdown for each of the [Appellants]." (ECF No. 18 at 3 (citations omitted).) In other words, Appellants seem to be arguing that because they *are* separate, their separateness was necessarily raised in the bankruptcy court. This all but admits that the argument they currently make was *not* raised in the bankruptcy court.

Nothing in the Dismissal Order (ECF No. 9-1) or the bankruptcy court's order denying a stay pending appeal (ECF No. 10-4) provides any hint that Appellants raised this argument previously. Appellants have likewise cited nothing to suggest that they raised the argument and the bankruptcy court just failed to address it. Arguments not

6

raised before an appeal are generally forfeited on appeal. *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011). The Court may, in its discretion, "entertain forfeited theories on appeal," but it may not reverse the bankruptcy court's judgment

> on the basis of a forfeited theory [unless] failing to do so would entrench a plainly erroneous result. To show plain error, a party must establish the presence of (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*Id.* (citation omitted). Here, Appellants refuse to acknowledge their potential forfeiture and so do not argue for plain error review. "And the failure to do so—the failure to argue for plain error and its application on appeal—surely marks the end of the road for an argument for reversal not first presented [below]." *Id.* at 1131.

Accordingly, Appellants have not shown a likelihood of success on this argument.

**C.    Insufficient Evidence**

Finally, Appellants argue that the bankruptcy court had "insufficient evidence at trial to establish the requisite *mens rea* in this case." (ECF No. 9 ¶ 24.) A bankruptcy court's factual findings are reviewed for clear error, *Homestead Golf Club, Inc. v. Pride Stables*, 224 F.3d 1195, 1199 (10th Cir. 2000)—a standard Appellants fail to acknowledge.

After a four-day trial, the bankruptcy court found that Appellants "have actual knowledge they are selling equipment which will be used to manufacture a controlled substance." (ECF No. 9-1 at 22.) The bankruptcy court supported that conclusion by summarizing the testimony of several witnesses, making credibility determinations, and ultimately finding that a number of credible witnesses and exhibits demonstrated that Appellants knew their customers would use the hydroponic equipment for marijuana

7

cultivation—indeed, that Appellants' business model depended on it. (*Id.* at 22–26.)

Appellants deny that the evidence supported as much (ECF No. 9 ¶ 32), but their only specific challenge is that the bankruptcy court should have weighed Appellee's testimony somewhat differently (*id.* ¶ 33). This argument contains no citation to anything in the bankruptcy court record, and in any event comes nowhere close to demonstrating that the bankruptcy court clearly erred in weighing Appellee's testimony. Appellants have shown no likelihood of success on this argument.

**D.    Hemp vs. Marijuana**

On December 20, 2018—shortly after Appellants filed this appeal—the President signed into law the Agriculture Improvement Act of 2018, Pub. L. No. 115-334. Among many other changes, this law lifted the federal ban on commercial and industrial hemp production and removed it from the CSA's Schedule I so long as it contains no more than 0.3% of THC by dry weight. *See id.* §§ 10113, 12619. Based on this, Appellants now claim that they might "reorganize based on the hemp market." (ECF No. 9 ¶ 34.) This, they say, undermines the bankruptcy court's conclusion that ordering Appellants to sever their ties to the marijuana industry, thereby permitting the case to go forward in bankruptcy court, was not a viable alternative to dismissal: "It is inconceivable [Appellants] could terminate any sales to known marijuana cultivators and still operate profitably." (ECF No. 9-1 at 26.)

Appellants do not substantiate a key premise of their hemp-for-marijuana argument, namely, that the commercial and industrial hemp market needs what they sell—hydroponic gardening equipment. Even if Appellants had support for that premise, it is not clear it would undermine the bankruptcy court's Dismissal Order. Appellants do not challenge the bankruptcy court's conclusion that Appellants have established "a

venerable reputation for expertise and hydroponic marijuana growing, and it is difficult to imagine how [Appellants] could prevent customers from continuing to patronize [Appellants'] stores because of this reputation." (*Id.* at 27.) In other words, Appellants would continue to have at least "reasonable cause to believe" that they were selling equipment that "will be used to manufacture a controlled substance." 21 U.S.C. § 843(a)(7).

Thus, Appellants have not shown a likelihood of success on this argument.

### IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Appellants' Motion for Stay Pending Appeal Pursuant to Fed. R. Bankr. P. 8007 (ECF No. 9) is DENIED;

2. Notwithstanding this ruling—

   a. **the Court's *sua sponte* temporary stay (ECF Nos. 12, 15–16) remains in full force and effect through 11:59 PM on Wednesday, January 23, 2019, at which point it will automatically dissolve**; but

   b. it shall not be a violation of the temporary stay for Appellee to re-commence proceedings in state court, or for the state court to issue orders it could have issued but for the bankruptcy proceedings; and

3. This matter shall be drawn to a magistrate judge for purposes of entering an appropriate briefing schedule.

Dated this 18th day of January, 2019.

BY THE COURT:

_____
William J. Martinez
United States District Judge